[Cite as *In re E.S.*, 2011-Ohio-2408.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 95915 and 95916**

IN RE:   E.S. AND C.S.

Minor Children

[APPEAL BY MOTHER, J.S.]

JUDGMENT:
AFFIRMED

Civil Appeals from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 08936923 and AD 08936132

**BEFORE:**     Stewart, P.J., Jones, J., and Keough, J.

**RELEASED AND JOURNALIZED:**   May 19, 2011

**ATTORNEY FOR APPELLANT MOTHER**

Christopher R. Lenahan
2035 Crocker Road
Westlake, OH    44145

**ATTORNEYS FOR APPELLEE CUYAHOGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES**

William D. Mason
Cuyahoga County Prosecutor

BY:    Gina S. Lowe
Assistant County Prosecutor
Cuyahoga County Department of Children
        and Family Services
4261 Fulton Parkway
Cleveland, OH    44144

**GUARDIAN AD LITEM FOR MOTHER**

Troy M. Hough
24298 Beech Lane
North Olmsted, OH    44070

**GUARDIAN AD LITEM FOR CHILDREN**

Pinkie Lue Clark
75 Public Square, Suite 800
Cleveland, OH    44113

MELODY J. STEWART, P.J.:

{¶ 1} Mother, J.S., appeals from a juvenile division order that terminated her parental rights and granted permanent custody of her two children, C.S. and E.S., to the Cuyahoga County Department of Children and Family Services. Her sole assignment of error complains that the court's order was unsupported by clear and convincing evidence. We have expedited hearing and disposition of this appeal as required by App.R. 11.2(C).

{¶ 2} The court granted permanent custody of the children to the agency by finding that permanent custody was in the best interest of the children, the children had not been abandoned, orphaned, or in the temporary custody of the agency for 12 or more months of a consecutive 22-month period, and that the children could not be placed with their parents within a reasonable time or should not be placed with their parents. See R.C. 2151.414(B)(1)(a). The court found that the children could not be placed with the mother within a reasonable period of time because, despite reasonable case planning and diligent efforts by the agency, the mother had failed to remedy the conditions that caused the children to be removed and she suffered from a chronic mental or emotional illness. See R.C. 2151.414(E)(1) and (2).

{¶ 3} Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, 481 N.E.2d 613, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 4} The children were removed from the mother's custody in August 2008. The older boy was three-years-old when he was removed — he had twice been found wandering in the street. He showed signs of developmental delay and has been diagnosed with attention deficit/hyperactivity disorder ("ADHD"). The younger boy was removed just days after his birth because the mother had not received any prenatal care and there were questions about her mental stability. Both children currently live with a maternal great aunt who is licensed in the foster care of children with special needs. The great aunt has expressed the intent to adopt both children. The father of one of the children has not appeared; the other father briefly made a claim for the child, but ceased contact with his attorney and did not attend the dispositional hearing. Neither father is a party to this appeal.

{¶ 5} Doctors diagnosed the mother as schizophrenic when she was 16 years old. Psychological profiles of the mother suggest that schizophrenia runs in her family. The mother's illness caused her to experience auditory hallucinations and have delusional and paranoid thoughts. She apparently

responded well to medication, but in June 2007, she stopped seeking treatment. Her symptoms returned, manifesting themselves in paranoid thoughts that someone was trying to kill her. She returned to treatment in December 2007, and a relative said that the mother "functions differently and better when on her medication."

{¶ 6} The mother said that she attended high school into the 11th grade, but had learning disabilities and described herself as a "slow" learner. A 2008 psychological evaluation concluded that the mother was not "mentally retarded," but she did test at her highest in the "borderline" intelligence range. Testing showed that the mother's ability to "attend and focus on information at hand (working memory ability) is significantly deficient * * *." This meant that her ability to process information and form a response "is weak." The results showed that "she does have some decreased intellectual functioning and may not make as good decisions as others may." But the results suggested that if she continues with her medication "she will function better than when not." Her level of intelligence left no "significant deficits" when compared to her daily activities.

{¶ 7} A 2010 psychological evaluation, prepared in conjunction with the agency's motion for permanent custody, showed continued concerns about the mother's mental stability. There were indications that the mother had difficulty keeping her doctors' appointments, which in turn caused her to lack

the necessary prescriptions for her condition. At the time of the 2010 evaluation, the mother was current on her medications. However, she was still experiencing "breakthrough symptoms of the psychosis," with daily auditory hallucinations involving "denigrating voices." She also admitted that she experienced paranoid delusions twice per week and had visual hallucinations of "dead people." The mother described herself as "depressed and short-tempered" and was having monthly violent episodes, with no specific triggering events.

{¶ 8} The mother was unemployed and had been since 2004, when she lasted just one week on a job. She collects supplemental security income. At the time of the 2008 evaluation, the mother lived with her own mother. By the time of the hearing in 2010, the mother had moved into a stable, appropriate housing arrangement with a different maternal aunt (not the maternal great aunt acting as foster mother) who also acts as the mother's legal guardian. The mother's legal guardian expressed an initial interest in obtaining custody of the children, but later withdrew that request. The mother continues to desire to live with her children in her own home, without any supervision.

{¶ 9} After gaining temporary custody of both children, the agency adopted a case plan that set a goal of reunifying the mother and children. The major components of the case plan required the mother to obtain stable

housing, complete parenting classes, and be compliant with prescribed medications.

**{¶ 10}** A social worker assigned to the case testified that the mother had completed five different parenting programs. Despite this, the social worker remained convinced that the mother had not benefitted from the classes, as demonstrated by supervised visitations with the children. The mother attended supervised visitations only in the company of her legal guardian. She did not interact with the children during these visitations and would normally look out a window as her legal guardian dealt with the children. The children sometimes needed a firm hand to control their behavior, but the mother could not control their behavior, thinking that their biting or hitting her showed how much they love her.

**{¶ 11}** Upon review of the evidence and testimony presented at the hearing, we find the court had clear and convincing evidence showing that the mother's mental illness proved that the children could not be placed with her within a reasonable amount of time. The 2010 psychological evaluation showed that, even though she was compliant with her medication, the mother continued to experience auditory hallucinations and paranoid delusions. The mother did not interact well with her children during visitations and did not appear able to control their behavior.

{¶ 12} The mother did not present any testimony, instead relying on her completion of five parenting classes to demonstrate her fitness to parent and staff notes from visitations showing that she acted appropriately by feeding the children, changing their diapers, and putting them in car seats.

{¶ 13} While the mother did show initiative in voluntarily taking extra parenting classes, the successful completion of a parenting class or any other aspect of a case plan is not enough. A parent can successfully complete the requirements of a case plan, but not substantially remedy the conditions that caused the children to be removed, as the case plan is "simply a means to a goal, but not the goal itself." *In re C.C.*, 187 Ohio App.3d 365, 2010-Ohio-780, 932 N.E.2d 360, ¶25. The social worker testified that she did not witness the early interactions between the mother and children, and that as the children grew older, "it would be appropriate to say that she did not interact with the children." Acknowledging that the children were "a handful," the social worker said that the mother did not demonstrate the ability to take care of both children at the same time. When recommending that the court grant the agency's motion for permanent custody, the guardian ad litem for the children's mother noted that if the mother needed her own legal guardian to assist her in meeting her mental health needs, the added pressure of handling the children "could be more than the Mother could handle on a day-to-day basis." Concern about the mother's mental

well-being was justified in light of the 2010 psychological evaluation showing that the mother was actively having hallucinations and having monthly "violent" episodes.

{¶ 14} Clear and convincing evidence likewise supported the court's finding that granting permanent custody of the children to the agency would be in their best interest. The court found that the children had been doing well in their present placement with the maternal great aunt trained in dealing with special needs. Testimony by the social worker showed that the older child had been doing "extremely well" in school and positive steps had been taken to control his ADHD and associated behavioral issues. The children's custodial history was such that they were comfortable and well-adjusted with the maternal great aunt and that returning to the mother would prove too disruptive. This was not a rash decision by the court — in August 2009, it noted the progress the mother made, with the assistance of her legal guardian, and granted her an additional six months to work on her parenting deficiencies. By the time of the hearing, however, the agency had concluded that the mother had not made any further strides in showing an ability to parent beyond obtaining certificates of completion issued by parenting classes. The court's agreement with the agency's assessment was supported by clear and convincing evidence. We find no error with the

court's decision to grant permanent custody of the children to the agency. The assigned error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas – Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, PRESIDING JUDGE

LARRY A. JONES, J., and
KATHLEEN ANN KEOUGH, J., CONCUR